IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| WENDY JANETH CHAVEZ RAMOS, | ) |
| | ) |
| PETITIONER, | ) |
| | )   Case No.: |
| v. | ) |
| | ) |
| EDUARDO ISMAEL ACOSTA | ) |
| OBREGON, | ) |
| | ) |
| RESPONDENT. | ) |

## **VERIFIED PETITION FOR THE RETURN OF THE MINOR CHILD**

COMES NOW, Petitioner, WENDY JANETH CHAVEZ RAMOS (hereinafter "Mother"), and files this, her *Verified Petition for the Return of the Minor Child* (hereinafter "*Petition*") pursuant to The Convention on the Civil Aspects of International Child Abduction, signed at The Hague on October 25, 1980, and The International Child Abduction Remedies Act, 42 U.S.C. 11601 et seq. and respectfully shows this Court as follows:

# INTRODUCTION

1.

This *Petition* is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, completed at The Hague on October 25, 1980 (hereinafter referred to as "The Hague Convention"), and the International Child Abduction Remedies Act (hereinafter referred to as "ICARA").

2.

It is filed as a result of the illegal and wrongful international removal and retention by Respondent (hereinafter "Father") of the parties' Minor Child in the United States of America from the proper custody of Mother and in breach of Mother's rights of custody from the Minor Child's habitual residence of Mexico.

3.

The objectives of The Hague Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting States; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. *Convention, Art.1*.

## JURISDICTION AND VENUE

### 4.

This Court has jurisdiction under 42 U.S.C. §11603, because this case involves the removal and retention of a Minor Child under the age of sixteen in the United States from the Child's habitual residence of Mexico. Upon information and belief, the Child and Father are residing in Father's home located at 10 Lynhaven Dr. Newnan, GA 30263, which is located within the jurisdiction of this Court in Coweta County, Newnan, Georgia.

## STATEMENT OF FACTS

### 5.

Mother and Father are Mexican citizens. See Mother's birth certificate attached as **Exhibit "1"** and Father's birth certificate attached as **Exhibit "2"**.

### 6.

The parties met in Panama City, Florida in 2006, while Father was temporarily in the state for work, and Mother was temporarily in the state on a family vacation.

### 7.

The parties were involved in a romantic relationship from approximately

August 2006 to approximately January 2010. The relationship began as a long-distance relationship and carried out as such until August 2007 when the parties moved to Newnan, Georgia into Father's brother's home.

8.

Mother and Father were never married.

9.

The parties are the biological parents of L.E.A.C. (hereinafter "Child" or "Minor Child"), a son born in Newnan, Georgia on December 15, 2008, with dual citizenship in both The United States and Mexico. See L.E.A.C.'s birth certificates attached as **Exhibit "3".** Mother is the biological Mother of the minor child, L.E.A.C. Mother has custodial rights to the Minor Child. Further, Mother exercised her rights of custody of the Minor Child.

10.

Father is on the Minor Child's birth certificate; however, the Child was born out of wedlock in this state and never legitimated.

11.

Shortly before the Child's birth, Father began displaying violent behavior.

12.

Father would pull on Mother's hair after verbal arguments. Then, Father began pushing Mother around during said arguments. These incidents began while Mother was pregnant and continued to carry out after the Child was born, often times around the Minor Child or while Mother held the Child in her arms.

13.

Once the Child was born, Mother not only feared for her safety, but also that of her son's.

14.

On September 4, 2009, Mother filed an Incident Report against Father. She decided not to press charges, however, she wanted to begin documenting his actions. See copy of Incident Report attached as **Exhibit "4".**

15.

The parties separated in January 2010, shortly after the Minor Child's first birthday and largely due to Father's increasing violent tendencies.

16.

On January 4, 2010, Mother and the Minor Child returned to Mexico with Father's consent. See January 4, 2010, notarized letter from Father allowing for

Mother's travel with the Child attached as **Exhibit "5"**. Mother, the Minor Child, and the Minor Child's maternal grandmother flew from Atlanta, Georgia to Phoenix, Arizona, where they then took a bus the rest of the trip to Mexico. See a copy of Mother's flight from Georgia to Arizona attached as **Exhibit "6"**. The Minor Child was one-year old at the time and did not require his own ticket to travel.

17.

Once moved to Mexico, Mother had a life free of Father's violence for herself and the Minor Child. The parties agreed that the Minor Child and Mother will be living in Mexico and Father will be living in the state of Georgia.

18.

Mother began pursuing higher education, earning scholarships to obtain her master's degree and is currently almost done with her doctorate program. See pictures of Mother and the Minor Child celebrating her various graduations throughout the years attached as **Exhibit "7"**.

19.

The parties agreed that Mother and the Minor Child would live in Mexico, and Father would remain in the state of Georgia.

20.

This arrangement worked well for the parties, as the Child had already previously travelled to Georgia to visit with Father during his breaks from school in Mexico a few times, and Mother accompanied the Child on some trips to Georgia, as well. In 2016, the parties even travelled to Orlando, Florida and took the Child on a vacation together to theme parks. See flights from Mexico to Florida for Mother and the Minor Child attached as **Exhibit "8".** The Mother and the Minor Child lived in Mexico for many years with the Minor Child occasionally coming on school breaks to visit with Father for a short period of time.

21.

Since January 4, 2010, Mexico has been the Minor Child's habitual residence.

22.

The Minor Child was enrolled and attended school in Mexico for a number of years, including being enrolled for the 2021-2022 school year, and received excellent grades in school. See Child's enrollment records attached as **Exhibit "9"** with an English translation attached as **Exhibit "10"** and Child's report card

attached as **Exhibit "11"** with an English translation attached as **Exhibit "12"**.

23.

The Minor Child has his own bedroom in Mother's home in Mexico. See pictures of Child's bedroom attached as **Exhibit "13"**.

24.

Mother and the Minor Child have always had a very close and loving relationship. See pictures of Mother and the Child attached as **Exhibit "14"**.

25.

The Minor Child was surrounded by close family and friends in Mexico, including his younger sister, a child born to Mother from a separate relationship. The Child maintained relationships with both his maternal and paternal families in Mexico. See pictures of the Minor Child and his family attached as **Exhibit "15"**.

26.

In Mexico, the Child was well established. He was an accomplished student and athlete. See pictures of the Child's awards attached as **Exhibit "16"**, and pictures and awards of the Child's extracurricular activities like soccer and swimming attached as **Exhibit "17"**. The Child also had medical insurance

coverage through Mother's husband and was up to date on his vaccines. See copies of health insurance and vaccine card attached as **Exhibit "18"**.

27.

From 2015 to 2021, the Minor Child traveled a few times to the state of Georgia for a short period of time during his summer vacations to visit with Father.

28.

On July 1, 2021, the Minor Child travelled from Mexico to the state of Georgia, accompanied by Father's brother, Luis Francisco Acosta Obregon, for the purpose of summer visit with Father. See confirmation of flights attached as **Exhibit "19"**.

29.

A return flight for the Minor Child was not purchased as the Minor Child was to return to Mexico by car, accompanied by Father's brother, per the parties' agreement. This was common practice for the parties, as the Minor Child had travelled to and from Mexico and Georgia by car a few times already, always accompanied by either Father's brother or Father's mother.

30.

The purpose of this trip to Georgia for the Child was not only to visit with Father, but also to receive his COVID-19 vaccinations.

31.

Since the start of the COVID-19 pandemic, Mother worked in a hospital in the COVID-19 unit. She observed first-hand the impact the virus had on people of all ages and backgrounds. The parties had agreed that the Minor Child would get both vaccine doses while visiting with Father in the summer.

32.

When the Minor Child traveled in July of 2021, he travelled with his Mexican passport as his United States passport was expired. See the Child's valid Mexican passport attached as **Exhibit "20",** and the Child's expired United States passport attached as **Exhibit "21".**

33.

In August 2021, Father informed Mother that the Minor Child would not be returning to Mexico.

34.

Father, with the help of his brother, made the decision to enroll the Minor

Child in school in Newnan, Georgia that same month, despite the Child being registered for his upcoming school year in Mexico. See communication between the parties regarding Child's school enrollment attached as **Exhibit "22"** with an English translation attached as **Exhibit "23".**

35.

Importantly, Mother notes Father, and Father's brother, enrolled the Child in 7th grade, the equivalent of *Primero Primaria* in Mexico, a grade the Child had already passed, thus, setting him back academically. See academic conversion chart between Mexico and The United States attached as **Exhibit "24".**

36.

Mother began communicating with *Secretaria de Relaciones Exteriores* (hereto "Office of Foreign Affairs" or "State Department") immediately after in September of 2021 requesting the return on the Minor Child. See correspondence exchanged between Mother and the State Department attached as **Exhibit "25".**

37.

That same month, Mother called the local Sheriff's Office of Coweta County to address the issue of Father not returning the Child. The Sheriff's

office did a well-check but were unable to do anything further to aid in the
Child's return.

38.

Mother has initiated Custody and Child Support proceedings in Mexico.
See September 27, 2021, Petition attached as **Exhibit "26"**.

39.

Service upon Father of the Custody action in Mexico has been attempted
by the office of the Consulate General of Mexico in Atlanta via letters rogatory.
Father was not home at the time of the first service attempt. The Consulate
General is making continued attempts at this time. It is upon information and
belief that Father is already aware of this separate Custody action in Mexico. See
documentation of service attempts attached as **Exhibit "27"**.

40.

Father refuses to return the Minor Child to Mexico despite Mother's
repeated requests and has largely ignored Mother when she tries to communicate
with Father about the same. See communication from Mother to Father regarding
the Child's return to Mexico attached as **Exhibit "28"** with an English
translation attached as **Exhibit "29".** The parties agreed that the Child would be

returned before school started in Mexico on August 30, 2021, as it was always historically done in the past years.

41.

Mother believes the Minor Child experienced a difficult school year. The Child was enrolled in English to Speakers of Other Languages courses and obtained many C's and D's in classes he otherwise did very well in in Mexico. See Child's 2021-2022 Report Card attached as **Exhibit "30".** Father also appears uninvolved in the Child's schooling. Mother asked Father about the Child's exams, having seen the dates for the same on the school's website, and Father was not aware that said exams had already happened. See communication between the parties regarding the Child's testing attached as **Exhibit "31"** with an English translation attached as **Exhibit "32".** The Child has also mentioned experiencing bullying to the Mother, where he and classmates were called to the Principal's office after other schoolmates made racist remarks to the Child and friends. Father never made mention of this incident directly to Mother.

42.

Mother has had very limited contact with the Minor Child over the phone as Father does not allow much of a contact to this date, and Father continues to

limit it even further as the months go by. Father does not encourage the Child to contact Mother, and Father has obtained a new cellphone number for the Child. See texts between the parties discussing Father's lack of support in having the Child communicate with Mother attached as **Exhibit "33"** with an English translation attached as **Exhibit "34".**

## 43.

Mother last exchanged text messages with the Child on June 25, 2022.

## 44.

Mother last had a telephone call with the Child on June 17, 2022.

## 45.

Mother last had a video call with the Child on August 20, 2021.

## 46.

Mother was exercising her custodial rights to the Child in Mexico, and Father's wrongful retention and removal of the Minor Child in the United States in July 2021 was in breach of Mother's custody rights to the Minor Child. If not for the wrongful removal and retention of the Minor Child by Father in the United States of America, Mother would have been exercising her custodial rights to the Minor Child.

47.

Mother never consented to Father's unilateral decision to wrongfully retain the Minor Child in The United States.

48.

Mother has repeatedly asked the Child be returned to his home in Mexico to her.

49.

Mother does not have a current Visa to travel to The United States.

50.

Father is an undocumented resident of The United States.

## WRONGFUL REMOVAL AND RETENTION OF THE CHILD BY THE RESPONDENT:

51.

Mother restates and re-alleges the allegations contained in Paragraphs One (1) through Fifty (50) as if fully set forth herein.

52.

The Hague Convention applies to cases where a Child under the age of sixteen (16) years has been removed or retained from their habitual residence in

breach of rights of custody of a plaintiff, which the plaintiff had been exercising at the time of the wrongful removal or wrongful retention of the Child.

53.

The Minor Child at issue in this case is under the age of sixteen (16).

54.

The habitual residence of the Minor Child is Mexico. Immediately before the wrongful removal and retention of the Minor Child by Father from Mexico to the United States of America, the Minor Child's habitual residence was Mexico.

55.

Mother is the biological mother of the Minor Child, and as such, the custodial parent of the Minor Child. Father wrongfully removed and retained the Minor Child in the United States in breach of Mother's rights of custody.

56.

Article Three (3) of The Hague Convention reads, in pertinent part:

**"The removal or the retention of a child is to be considered wrongful where – a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually**

**resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."**

57.

At the time of Father's wrongful removal and retention of the Minor Child, Mother was exercising her custodial rights within the meaning of the Convention, as she was the Child's main caretaker since the Child's birth, and the Child's sole caretaker since approximately January 2010, with the exception of the few weeks the Child would spend with Father in the state of Georgia in the summer.

58.

Upon information and belief, Father takes the Minor Child to work with him on construction sites, an environment that isn't safe for the Child. See attached pictures of the Child performing various labor tasks attached as **Exhibit "35"** and communication between the parties where Father shows Mother the Minor Child is paid for said labor attached as **Exhibit "36"** with an English translation attached as **Exhibit "37".**

59.

Mother is requesting the return of the Child to Mexico by virtue of filing this immediate action and by filing Custody proceedings in Mexico.

60.

Mother has taken all legal steps available to her to seek the return of the Child to Mexico.

61.

Mother has never acquiesced or consented to the retention of the Minor Child in United States of America from Mexico.

62.

The Child is currently physically located within the Northern District of Georgia in Coweta County, Newnan, Georgia.

## **ATTORNEY'S FEES AND COSTS (22 USC §9007)**

63.

Mother has incurred significant attorney's fees and litigation costs as a result of the wrongful retention of the Minor Child by Father.

64.

Mother respectfully requests that this Court award her all litigation costs and

attorney's fees incurred in this action, including transportation costs incurred by Mother as required by (22 USC §9007).

## NOTICE OF HEARING (22 USC §9003(c))

### 65.

Pursuant to 22 USC §9003(c), Father shall be given notice of these proceedings in accordance with the laws governing notice in interstate Child Custody proceedings.

## PROVISIONAL AND EMERGENCY REMEDIES

### 66.

Mother requests that the Court issue a Show Cause Order forthwith ordering the appearance of Father and the Minor Child before this Court on the first available date on the Court's calendar and directing Mother to serve the Show Cause Order on the Father by process forthwith.

### 67.

Pursuant to 42 U.S.C. §11604, in a proceeding for the return of a Child, "[n]o court exercising jurisdiction...may...order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604. In this case, the law referred to is that of

Georgia. In Georgia, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as O.C.G.A. §19-9-40 et seq. Georgia law addresses the appearance of the parties and the children in such cases and authorizes this Court to order the appearance of the children and custodian or custodians *together*. This Court therefore has the authority to issue a Show Cause Order, ordering the appearance of Father and the Child in that the provisions of O.C.G.A. §19-9-40 et seq. can be met.

68.

Mother notes that although her Visa is expired, and although there are no available appointments for renewal at the moment, it is upon information and belief that upon confirmation of a Court hearing in the above-styled action, Mother could be able to request and obtain a Humanitarian Visa that would grant her the ability to be present in Court in-person in the state of Georgia.

69.

Mother further requests that along with the Show Cause Order, this Court issue an Order prohibiting the removal of the Child from the jurisdiction of this Court during the pendency of the proceedings in this Court, with the Order taking

into safe keeping all of the Child's travel documents and thereafter, and an Order setting an expedited hearing on the *Petition*.

70.

Pursuant to Article 11 of the Hague Convention, judicial authorities are to act expeditiously in Hague Convention matters. The Hague Convention provides for a six-week time frame to reach a resolution of all judicial matters. *See <u>Chafin v Chafin</u>*, 133 S. Ct. 1017 (2013).

### <u>RELIEF REQUESTED</u>

**WHEREFORE,** Mother, WENDY JANETH CHAVEZ RAMOS, respectfully requests the following relief:

a) That this Court issue and Order directing the prompt return of the Minor Child to his habitual residence of Mexico in accordance with Mother's parental responsibility rights, residence rights, and rights of custody under the laws of Mexico and Article 5 of the Convention respectively;

b) That this Court issue a Show Cause Order prohibiting the removal of the Child from the jurisdiction of this Court;

c) That this Court take into safe keeping the Child's passports and travel

documents;

d)    That this Court issue a Show Cause Order forthwith commanding the Father appear with the Child in this Court to show cause why the Child has been kept from his Mother and why the Child should not be returned to Mexico forthwith;

e)    That this Court schedule the Show Cause Hearing as soon as possible and the Final Trial of the matter soon thereafter, in keeping with the Supreme Court of the United States' instructions on complying with the time considerations of the Hague Convention;

f)    That if Father fails to appear pursuant to this court's Show Cause Order, that this Court issue an Order directing that the name of the Child be entered into the national police computer system (N.C.I.C.) missing persons section and an arrest warrant be issued for the Father;

g)    That this Court issue an Order directing Father pay Mother's reasonable legal costs and expenses pursuant to 22 USC §9007; and

h)    That this Court grant any such further relief as justice and Mother's cause may require.

**(SIGNATURE ON FOLLOWING PAGE)**

RESPECTFULLY SUBMITTED this 28th day of June, 2022.

_/s/: **Dina Khismatulina**_
DINA KHISMATULINA
GA Bar No.: 827929
MICHAEL E. MANELY
GA Bar No.: 468580

The Manely Firm, P.C.
75 14th Street NE
Suite 2300
Atlanta, Georgia 30309
Telephone: (770) 421-0808
Facsimile: (770) 421-0288
tmf@allfamilylaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| WENDY JANETH CHAVEZ RAMOS, | ) |
| | ) |
| PETITIONER, | ) |
| | )    Case No.: |
| v. | ) |
| | ) |
| EDUARDO ISMAEL ACOSTA | ) |
| OBREGON, | ) |
| | ) |
| RESPONDENT. | ) |

## VERIFICATION

WENDY JANETH CHAVEZ RAMOS, Petitioner in the above-styled action,

after first being duly sworn, deposes and states that the facts in the foregoing *Verified*

*Petition for the Return of the Minor Child* are true and correct to the best of her

knowledge, information, and belief.

_Wendy Chavez R._
WENDY JANETH CHAVEZ RAMOS,
Affiant

Sworn to and subscribed
before me this 24ᵗʰ day
of _June_ , 2022.

_____
NOTARY PUBLIC

EN EL TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
POR EL DISTRITO NORTE DE GEORGIA
DIVISIÓN NEWNAN

WENDY JANETH CHÁVEZ RAMOS, )
                                    )
      ACTOR,               )
                                      )     No Caso.:
   v.                    )
                                      )
EDUARDO ISMAEL ACOSTA     )
  OBREGÓN,                )
                                      )
      DEMANDADO.     )

## VERIFICACIÓN

WENDY JANETH CHAVEZ RAMOS, demandante en la acción mencionada anteriormente, después de haber sido debidamente juramentada, declara y afirma que los hechos de la anterior *Petición Verificada para la Restitución del Menor* son verdaderos y correctos según su leal saber y entender, información, y creencia



WENDY JANETH CHÁVEZ RAMOS,
Declarante

Jurado y suscrito ante
mí este día __24__ de
__Junio__, 2022.

_____
NOTARIO PÚBLICO

*Lic. María Luisa Corral Ríos*
*Notario Público Número Uno*
*Distrito Judicial Benito Juárez*
*Estado de Chihuahua*

En la Ciudad de Cuauhtémoc, Estado de Chihuahua, el día 24 veinticuatro del mes de junio del año 2022 dos mil veintidós, la Suscrita Licenciada **MARÍA LUISA CORRAL RÍOS, NOTARIA PÚBLICO NÚMERO UNO** en actual ejercicio para este Distrito Judicial Benito Juárez, hago constar y: -----------------------------------------------------------------------------------------
---------------------------------------------**C E R T I F I C O:** ----------------------------------------------------
Que comparece ante mí la señora **WENDY JANETH CHAVEZ RAMOS** y me solicita se haga constar ante la Suscrita la traducción del documento que acompaño del idioma inglés al español y para tal efecto se hace acompañar de la Licenciada **TERESA GRAJEDA GUTIÉRREZ** manifestando que acepta el cargo de Perito Traductor protestando su leal y fiel desempeño, quien tiene conocimientos del idioma inglés y en este acto me exhibe el documento que según su dicho bajo protesta de decir verdad, es la fiel reproducción del documento antes mencionado al idioma español.-----------------------
Para acreditar lo anterior agrego el documento acompañado de su traducción al idioma español marcado con el número **UNO**. ----------------------------------------------------------------------------------
--------------------------------------------**YO, LA NOTARIA, DOY FE:** ------------------------------------------
**PRIMERO.** - **CONOCIMIENTO Y CAPACIDAD**: Que conozco a la Licenciada **TERESA GRAJEDA GUTIÉRREZ**, no así a la compareciente quien se identifica con el documento oficial con fotografía que en copia certificada agrego a la presente marcada con el número **DOS** y a mi juicio tiene la capacidad legal requerida para contratar y obligarse.---
**SEGUNDO.- DATOS GENERALES**: Que las comparecientes por sus generales es: La señora **WENDY JANETH CHAVEZ RAMOS**, mexicana, originario Anáhuac, Chihuahua; en donde nació el día veinticinco de Febrero de mil novecientos ochenta y ocho, casada, empleada y con domicilio en calle séptima número novecientos en Colonia Anáhuac, Chihuahua y accidentalmente de paso por esta Ciudad; y la Licenciada **TERESA GRAJEDA GUTIERREZ**, mexicana, originaria de esta Ciudad, en donde nació el día catorce de octubre de mil novecientos setenta y cuatro, docente, soltera y con domicilio en Calle Nicolás Bravo y doce de octubre número dos mil trescientos sesenta y uno de esta Ciudad.--------------------------------------------------------------------------
**TERCERO. -** Que lo inserto y relacionado concuerda fiel y correctamente con los hechos y documentos originales que tengo a la vista y a los cuales me remito. ------------------------
**CUARTO. -** Que se tomó razón bajo el número **25,168 VEINTICINCO MIL CIENTO SESENTA Y OCHO** del Libro de Registro de Actas número **VEINTINUEVE** de esta Notaría.------------------------------------------------------------------------------------------------------------------
**QUINTO. -** Que los comparecientes leyeron por si mismos el acta, les expliqué su valor y consecuencias legales, manifestando su conformidad con la misma firmando para constancia en unión de la Notaria que actúa. - **DOY FE.** --------------------------------------------------

**ATENTAMENTE**

*Wendy Chavez R*
**SRA. WENDY JANETH CHAVEZ RAMOS**

**LIC. TERESA GRAJEDA GUTIERREZ**
Perito Traductor

**LA NOTARIA PUBLICO NUMERO UNO**
**LICENCIADA MARIA LUISA CORRAL RIOS**